[No. 160-41394-3.    Division Three.    August 24, 1970.]

JERRY L. LUNSFORD, *Appellant,* v. CLAIRE M. NEAL *et al.,*
*Respondents.*

*Dobbs & Van Diest* and *Lauren W. Dobbs,* for appellant.

*Ronald F. Whitaker* (of *Walters & Whitaker*), for respondents.

GREEN, J.—Plaintiff, Jerry L. Lunsford, brought this action to recover for property damage and personal injuries arising from a motorcycle-automobile accident. From a jury verdict in favor of defendant, plaintiff appeals.

The accident occurred on March 28, 1968, shortly after 10 p.m. on East Chestnut Street in Yakima. East Chestnut Street is 52 feet wide, one-way, and westbound; there is angle parking on each side of the street. At the time of the accident, vehicles were parked along both sides of the street, leaving two lanes for traffic each about 11 feet wide.

Plaintiff testified as follows: He was traveling south on Second Street and stopped his motorcycle for a red light in the extreme right lane where it intersects East Chestnut Street, intending to turn right. Stopped alongside and to the left of plaintiff, but still in the right lane, was a vehicle occupied by two friends. Plaintiff was talking to them about where to park his motorcycle before they proceeded

to a nightspot. In the right lane on the opposite side of the intersection plaintiff observed defendant's vehicle facing him. When the light changed, plaintiff noticed that defendant's front left-turn signal was on as she turned left into the right lane on Chestnut Street. Plaintiff then turned right into the right lane of Chestnut Street at about 5 to 10 miles per hour and was to be followed by his friends. He was about 10 or 15 feet behind defendant's vehicle. Plaintiff followed defendant in the right lane for approximately 5 to 10 feet, when she began slowing down and her brake lights came on; plaintiff thought she was looking for a parking spot and moved into the left lane to pass. As he proceeded in the left lane just to the right of an oil slick in the middle of that lane, defendant seemed to be increasing her speed. Plaintiff, traveling 15 to 18 miles per hour, was a "little behind defendant" when she suddenly turned left in front of him towards a vacant parking stall on the left side of East Chestnut Street. He applied his brakes "hard" and collided with the left side of defendant's car just behind the door; his motorcycle was knocked off balance; he collided with defendant's car a second time and then collided with a nearby, unattended parked car. Prior to the police investigation, defendant's car was moved.

Defendant Gae Ellen Neal testified as follows: She was driving north on Second Street in a 1956 2-door Chevrolet sedan, with two passengers in the front seat. At the intersection of Second Street and East Chestnut Street she stopped for a red light and signaled her intention to turn left. From there she observed the parking stalls on the right side of East Chestnut Street were taken. When the light changed, she waited for defendant to clear the intersection, but when he delayed doing so she turned left into the middle of the left lane of East Chestnut Street, at 5 to 10 miles per hour. As she proceeded at the same speed, she continued looking for a vacant parking stall; she saw empty parking stalls ahead on the left side of the street; she looked to the rear and saw no vehicles; she swerved to the right about 3 feet over the center line, slowed down

and started to turn left into a parking stall. As she was doing so, she heard a loud noise and Jan Ledlin, one of her passengers, yelled "motorcycle." Defendant looked over her left shoulder and saw plaintiff slide into the left side of her car. She claims her vehicle was not moved before the investigating officer arrived. Defendant's turn signal did not shut off automatically; after turning from Second Street into East Chestnut, she left the turn signal on to show her intention to make a left turn into a parking spot.

Officer Raymond K. Farabee investigated the accident and fixed the point of impact 80 feet west of the west curb line of Second Street on East Chestnut Street and 4 feet 7 inches south of the center line of the street in the left lane of travel.

Plaintiff's version of the accident was substantiated by the testimony of the two occupants of the following car. Defendant's version of the accident was substantiated by the testimony of her two passengers.

The jury returned a verdict for the defendant. Written on the form of verdict were the words "contributory negligence."

First, plaintiff contends the court erred in submitting the following instruction on the sounding of a horn:

> You are instructed that it is provided by Yakima City ordinance that:
> (e) Every motor vehicle shall be equipped with a suitable horn, which shall be sounded at any time when such vehicle is approaching a condition of danger or where, in the exercise of due care, warning should be made or at such times or under such conditions as required by law. . . . A motorcycle is a motor vehicle.

There is no evidence that plaintiff sounded his horn; defendant testified she heard none. Plaintiff takes the position that under either version of the accident there is no evidence from which the jury could infer that he was "approaching a condition of danger" or that a "situation existed" requiring him to sound his horn. We disagree. Plaintiff testified that when defendant slowed down soon after

turning into Chestnut Street he thought she was looking for a parking space. Plaintiff, who was traveling 5 to 10 miles per hour, elected to change lanes and pass. Although disputed, defendant claims her left-turn signal was on. Since East Chestnut Street is one-way with angle parking on both sides, plaintiff was alerted to the possibility that defendant might choose to park on either side of the street. Under these facts, we believe a jury question was presented as to whether plaintiff in the exercise of due care should have sounded his horn and whether plaintiff's failure to sound his horn was a proximate cause of the accident. The jury could have found that if plaintiff had sounded his horn, defendant would have been able to stop her vehicle in time to avoid the accident or delay her left turn until plaintiff had completed his pass. The trial court did not err in submitting this instruction. *Orme v. Watkins,* 44 Wn.2d 325, 267 P.2d 681 (1954); *Carlisle v. Hargreaves,* 112 Wash. 383, 192 P. 894 (1920).

Second, plaintiff contends the court erred in submitting an instruction on the duty of a person to operate a vehicle in a careful and prudent manner and at a reasonable and proper speed.

> You are instructed that it is provided by an ordinance of the City of Yakima that:
>> Every person operating a vehicle of any character upon a public street or alley shall operate the same in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of traffic, condition of brakes, weight of vehicle, grade and width of highway, condition of surface, and freedom of obstruction to view ahead, and consistent with any and all conditions existing at the point of operation so as not to unduly or unreasonably endanger the life, limb, property or other rights of any person entitled to the use of the street or alley . . .

Plaintiff contends that since there was no evidence, direct or physical, of excessive or unreasonable speed under the

circumstances of this case, it was prejudicial error to inject the issue. This instruction is a statement of the statutory law establishing the general criteria for operation of vehicles in Yakima and applied to both drivers. Under defendant's version, the jury could have found plaintiff negligent when he speeded up his motorcycle and attempted to pass defendant's vehicle at a time when she had not completely removed herself from his lane of travel and when her left-turn signal was on; or under plaintiff's version it could have been argued that defendant was not operating her vehicle in a careful and prudent manner and at a reasonable speed in all the circumstances when she first slowed down and then speeded up to make a left turn across plaintiff's lane of travel to reach a parking stall. The instruction does not require any particular speed to be negligent, but only one that is careful and prudent under all circumstances. This was a matter for the jury and there was no error in giving the instruction.

Third, plaintiff contends the court erred in failing to submit two proposed instructions setting out portions of ordinances of the city of Yakima defining the position from which turns must be made. We believe the trial court properly refused to give these instructions. The portions of those instructions relating to turns applicable to the instant case were adequately covered in the instructions given.

Last, plaintiff claims the trial court erred in failing to grant motion for new trial based on misconduct of a juror. The alleged misconduct enumerated in affidavits submitted by the court clerk, court bailiff, and plaintiff's counsel is that the juror: whispered, caused his chair to squeak, distracted other jurors, placed a cigarette in his mouth during the trial, left the jury room without permission during the trial, had a drink during lunch while the trial was in progress, and attempted to get a drink while the jury was out to dinner during its deliberation. It is plaintiff's position the entire misconduct did not come to counsel's or the court's attention until after the trial. However, plaintiff acknowledges that during the early stages of the trial, some of the

conduct of this juror was called to the attention of both counsel by the trial judge. At that time, counsel did not ask for a mistrial. The issue was not raised until the motion for new trial. Another juror seated next to the juror in question stated in his affidavit that he was not distracted at any stage of the trial, but heard all the testimony, the court's instructions, and arguments of counsel. Further, he did not believe other members of the jury were distracted either. The trial judge had the opportunity to observe much of the conduct of the juror firsthand, and to weigh the claimed misconduct in light of the entire conduct of the trial. We cannot say that he erred in refusing to grant a new trial on this ground. *Casey v. Williams*, 47 Wn.2d 255, 287 P.2d 343 (1955); *Taylor v. Kitsap County Transp. Co.*, 158 Wash. 404, 290 P. 996 (1930).

Judgment affirmed.

Evans, C. J., and Munson, J., concur.